Slip Op. 12 - 68

UNITED STATES COURT OF INTERNATIONAL TRADE

AMANDA FOODS (VIETNAM)
LIMITED, *et al.*,

    Plaintiffs,

       v.

UNITED STATES,

    Defendant,

      and

AD HOC SHRIMP TRADE ACTION
COMMITTEE and THE DOMESTIC
PROCESSORS,

    Defendant-Intervenors.

Before: Donald C. Pogue,
        Chief Judge

Consol. Court No. 09-00431[1]

OPINION

[Affirming the Department of Commerce's final results of
administrative review as modified by remand redetermination]

Dated: May 30, 2012

    Matthew J. McConkey and Jeffery C. Lowe, Mayer Brown
LLP, of Washington, DC, for Plaintiff Amanda Foods (Vietnam) Ltd.

    John J. Kenkel and J. Kevin Horgan, DeKieffer & Horgan,
of Washington, DC, for Consolidated Plaintiff Viet Hai Seafood
Co., Ltd.

    Matthew R. Nicely and David S. Christy, Jr., Thompson
Hine LLP, of Washington, DC, for Consolidated Plaintiffs Bac Lieu
Fisheries Joint Stock Co.; Ca Mau Seafood Joint Stock Co.;
Cadovimex Seafood Import-Export and Processing Joint-Stock Co.;
Cafatex Fishery Joint Stock Corp.; Cuulong Seaproducts Co.;
Danang Seaproducts Import Export Corp.; Minh Hai Export Frozen
Seafood Processing Joint-Stock Co.; Minh Hai Joint-Stock Seafoods

---

[1] This action was consolidated with Court Nos. 09-
00434, 09-00435, 09-00438, and 09-00446. Order at 2, Feb. 9, 2010, ECF No.
36.

Processing Co.; Ngoc Sinh Private Enter.; Nha Trang Seaproduct Co.; Phu Cuong Seafood Processing and Import-Export Co., Ltd.; Sao Ta Foods Joint Stock Co.; Soc Trang Seafood Joint Stock Co.; UTXI Aquatic Products Processing Corp.

        Robert G. Gosselink and Jonathan M. Freed, Trade Pacific PLLC, of Washington, DC, for Consolidated Plaintiff Cam Ranh Seafoods Processing Enter. Co.

        Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the briefs was Jonathan M. Zielinski, Senior Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

        Andrew W. Kentz, Jordan C. Kahn, and Nathaniel M. Rickard, Picard Kentz & Rowe LLP, of Washington, DC, for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

        Elizabeth J. Drake, Geert M. De Prest, and Wesley K. Caine, Stewart and Stewart, of Washington, DC, and Edward T. Hayes, Leake & Andersson, LLP, of New Orleans, LA, for Defendant-Intervenor the Domestic Processors.

        **Pogue, Chief Judge:** This case[2] is again before the

court following a voluntary remand ordered by Amanda Foods

(Vietnam) Ltd. v. United States, 35 CIT __, 807 F. Supp. 2d 1332,

---

        [2] This case concerns the third administrative review of the antidumping duty ("AD") order covering certain frozen warmwater shrimp from the Socialist Republic of Vietnam ("Vietnam").  See Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam, 74 Fed. Reg. 47,191 (Dep't Commerce Sept. 15, 2009) (final results and final partial rescission of antidumping duty administrative review) ("AR3 Final Results"), and accompanying Issues & Decision Memorandum, A-552-802, ARP 07-08 (Sept. 8, 2009), Admin. R. Pub. Doc. 303, available at http://ia.ita.doc.gov/frn/summary/VIETNAM/E9-22188-1.pdf ("AR3 I & D Mem.") (adopted in AR3 Final Results, 74 Fed. Reg. at 47,191-92).

1350 (2011) ("Amanda Foods IV").  Amanda Foods IV directed the

Department of Commerce ("Commerce" or "the Department") to

reconsider the calculation of the all-others rate for the

sixteen[3] remaining cooperative, non-individually investigated

respondents ("all-others rate").  Upon remand, Commerce reopened

the record to obtain, from these cooperative respondents, count-

size specific Quantity and Value Questionnaire ("Q&V

Questionnaire") data.  After determining that the record,

supplemented by this Q&V data, contained no indication of dumping

by these cooperative, non-individually investigated respondents,

Commerce assigned these respondents a rate equal to an average of

the weighted-average dumping margins for the individually

investigated respondents. Final Results of Redetermination

Pursuant to Court Remand, A-552-802, ARP 07-08 (Mar. 29, 2012),

at 6-9, Remand R. Pub. Doc. 18, available at

http://ia.ita.doc.gov/remands/11-155.pdf (last visited May 21,

_____

[3] There were twenty-five separate rate respondents in the
third administrative review. AR3 Final Results, 74 Fed. Reg.
at 47,196.  Two respondents, Can Tho Agricultural and Animal
Products Import Export Co. and Grobest & I-Mei Industries
(Vietnam) Co., Ltd., did not challenge the AR3 Final Results.
Consolidated Plaintiff Viet Hai Seafood Co., Ltd., received a
zero rate in the AR3 Final Results, id. at 47,196,  and did not
challenge that determination.  Finally, on March 8, 2012, the
court signed a stipulation of dismissal for six of the
Consolidated Plaintiffs: Coastal Fisheries Development Corp.;
Investment Commerce Fisheries Corp.; Nha Trang Fisheries Joint
Stock Co.; Thuan Phuoc Seafoods and Trading Corp.; Viet Foods
Co., Ltd.; and Vinh Loi Import Export Co. Stipulation of
Dismissal, Mar. 8, 2012, ECF No. 80.

2012) ("Remand Results").[4]

Two Defendant-Intervenors, the Ad Hoc Shrimp Trade Action Committee ("AHSTAC") and a group of Domestic Processors, challenge the Remand Results.

The court has jurisdiction over this action pursuant to § 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006)[5] and 28 U.S.C. § 1581(c) (2006).

For the reasons explained below, the court affirms the Remand Results.


**BACKGROUND**

Plaintiffs are cooperative, non-individually investigated respondents in the third administrative review of the AD order covering certain frozen warmwater shrimp from Vietnam.  In the proceedings leading to the AR3 Final Results, Commerce, pursuant to 19 U.S.C. § 1677f-1(c)(2), limited the number of individually investigated respondents to the three respondents accounting for the largest volume of subject merchandise, and each such respondent received a *de minimis*

---

[4] The rate calculated for the sixteen remaining Plaintiffs was 0.26% or *de minimis*. Remand Results at 8-9.

[5] All subsequent citations to the Tariff Act of 1930 will be to Title 19 of the U.S. Code, 2006 edition.

rate.[6] <u>AR3 Final Results</u>, 74 Fed. Reg. at 47,194-95.  When the
Department limits the number of individually investigated
respondents, it must establish an all-others rate for those
respondents who were not individually investigated.  In doing so,
the Department takes guidance from 19 U.S.C. § 1673d(c)(5).[7] <u>See</u>

---

[6] Pursuant to 19 U.S.C. § 1677f-1(c)(2), Commerce may, under
certain conditions, limit the number of individually investigated
respondents when it is not practicable to individually
investigate all respondents.

[7] 19 U.S.C. § 1673d(c)(5) reads:

Method for determining estimated all-others rate

(A) General rule

For purposes of this subsection and section 1673b(d) of
this title, the estimated all-others rate shall be an
amount equal to the weighted average of the estimated
weighted average dumping margins established for
exporters and producers individually investigated,
excluding any zero and de minimis margins, and any
margins determined entirely under section 1677e of this
title.

(B) Exception

If the estimated weighted average dumping margins
established for all exporters and producers
individually investigated are zero or de minimis
margins, or are determined entirely under section 1677e
of this title, the administering authority may use any
reasonable method to establish the estimated all-others
rate for exporters and producers not individually
investigated, including averaging the estimated
weighted average dumping margins determined for the
exporters and producers individually investigated.

id. at 47,195.  When setting the all-others rate for the third

administrative review, Commerce interpreted 19 U.S.C.

§ 1673d(c)(5) to discourage the use of *de minimis* rates in

calculating the all-others rate.  Consequently, because the only

rates on the record of the third administrative review were the

individually investigated respondents' *de minimis* rates, Commerce

assigned the cooperative, non-individually investigated

respondents a rate based on the "most recent rate calculated for

the non-selected companies in question, unless we calculated in a

more recent segment a rate for any company that was not zero, *de*

*minimis*, or based entirely on [facts available]." Id. at 47,195.[8]

However, after the release of the AR3 Final Results,

in response to a challenge to the AR2 Final Results, the court

issued a series of opinions rejecting Commerce's methodology for

calculating the all-others rate when all individually

investigated respondents receive zero or *de minimis* rates. See

Amanda Foods (Vietnam) Ltd. v. United States, 33 CIT __, 647 F.

Supp. 2d 1368 (2009) (remanding the AR2 Final Results to

Commerce) ("Amanda Foods I"); Amanda Foods (Vietnam) Ltd. v.

---

[8] The methodology that Commerce employed to calculate the
all-others rate in the third administrative review was consistent
with the methodology it employed in the second administrative
review of this AD order. See Certain Frozen Warmwater Shrimp from
the Socialist Republic of Vietnam, 73 Fed. Reg. 52,273, 52,274-75
(Dep't Commerce Sept. 9, 2008) (final results and final partial
rescission of AD duty administrative review) ("AR2 Final
Results").

United States, 34 CIT __, 714 F. Supp. 2d 1282 (2010) (reviewing

the remand redetermination conducted pursuant to Amanda Foods I

and ordering a second remand) ("Amanda Foods II"); Amanda Foods

(Vietnam) Ltd. v. United States, 35 CIT __, 774 F. Supp. 2d 1286

(2011) (reviewing the remand redetermination conducted pursuant

to Amanda Foods II and affirming the AR2 Final Results) ("Amanda

Foods III").

        The facts of the action challenging the AR2 Final

Results were similar to those now before the court: Plaintiffs

were cooperative, non-individually investigated respondents

challenging Commerce's assignment of an all-others rate derived

from prior reviews when all individually investigated respondents

received a zero or de minimis rate.  In Amanda Foods I, the court

observed that the individually investigated respondents' zero or

de minimis rates, when considered in the light of other recent

investigations of shrimp producers and exporters from Vietnam,

constituted "evidence indicating that the responding separate

rate Plaintiffs may also no longer be engaged in dumping." Amanda

Foods I, 33 CIT at __, 647 F. Supp. 2d at 1380.  Therefore,

because there was not "sufficient evidence on the record which

could justify ignoring the evidence in favor of assigning a de

minimis rate to Plaintiffs and which would support as reasonable

the alternative rate chosen," id. at 1381, the court remanded the

case to Commerce to "either assign the Plaintiffs the weighted

average rate of the mandatory respondents, or else . . . provide justification . . . for using another rate," id. at 1382.

In its remand redetermination following Amanda Foods I, Commerce continued to defend its methodology, arguing that 19 U.S.C. § 1673d(c)(5) "articulates a preference that the Department avoid zero, *de minimis* rates or rates based entirely on facts available when it determines the appropriate dumping margins for cooperative uninvestigated respondents." Amanda Foods II, 34 CIT at __, 714 F. Supp. 2d at 1287 (internal quotation marks omitted).  While the court in Amanda Foods II agreed with Commerce that § 1673d(c)(5)(A) expresses such a preference, id. at 1291, the court found unreasonable Commerce's reading of that preference into § 1673d(c)(5)(B), id. at 1291–92.  The court found Commerce's reading unreasonable because it contravened the explicit statutory language that listed averaging of zero and *de minimis* rates as the sole example of a reasonable methodology for calculating the all-others rate when all individually investigated respondents receive such rates. Id. at 1292 ("By categorically excluding the mandatory respondents' zero and *de minimis* margins in calculating the separate rate, the methodology used on remand was unreasonable").  On these grounds, the court again remanded this issue to Commerce.

In its remand redetermination following Amanda Foods II, Commerce changed its methodology and chose to average the *de*

*minimis* rates of the individually investigated respondents to

arrive at the all-others rate. Amanda Foods III, 35 CIT at __,

774 F. Supp. 2d at 1289-90.  Commerce confirmed the accuracy of

this rate by reopening the record to obtain, from the

cooperative, non-individually investigated respondents, responses

to  supplementary Q&V Questionnaires detailing all sales during

the period of review on a shrimp count-size specific basis. Id.

Using the Q&V Questionnaire data, Commerce compared the count-

size specific sales to the count-size specific weighted-average

normal value of the mandatory respondents and concluded that the

record did not show any evidence of dumping. Id.  Satisfied that

the rate determined by averaging the zero and *de minimis* margins

of the individually investigated respondents was corroborated by

the supplementary evidence, Commerce assigned that average rate

as the all-others rate. Id. at 1290.  In affirming Commerce's

methodology, the court held that

> [Commerce] has applied a methodology specifically
> contemplated in the AD statute as a reasonable approach
> under similar circumstances and has reasonably
> corroborated the resulting rates with supplemental
> record evidence that a reasonable mind could accept as
> sufficient to support its conclusion — that the average
> of the mandatory respondents' zero and *de minimis* rates
> yields rates that are not unreasonably reflective of
> Plaintiffs' actual pricing behavior.

Id. at 1292 (citation omitted).

        Because Amanda Foods I, II and III called into question

the methodology Commerce used in calculating the all-others rate

in the third administrative review, Commerce requested a

voluntary remand to reconsider the AR3 Final Results.  The court

granted Commerce's request. Amanda Foods IV, 35 CIT at __, 807 F.

Supp. 2d at 1350.


## STANDARD OF REVIEW

        "The court will sustain the Department's determination

upon remand if it complies with the court's remand order, is

supported by substantial evidence on the record, and is otherwise

in accordance with law." Jinan Yipin Corp. v. United States, 33

CIT __, 637 F. Supp. 2d 1183, 1185 (2009) (citing 19 U.S.C.

§ 1516a(b)(1)(B)(i)).


## DISCUSSION

        The court will consider, separately and in turn, the

arguments of each Defendant-Intervenor challenging the Remand

Results.

I.   AHSTAC

        AHSTAC argues, principally, that the methodology

employed by Commerce in the Remand Results is contrary to the

statutorily mandated methodology for calculating a dumping

margin. Def't-Intervenor Ad Hoc Shrimp Trade Action Comm.'s Reply

to Pl.'s Comments on Final Results of Redetermination Pursuant to

Court Remand at 2, ECF No. 91 ("AHSTAC's Reply Br."). However, as AHSTAC notes "this Court affirmed the methodology in AR2 over AHSTAC's objections." AHSTAC's Reply Br. at 3. As the court has considered and rejected AHSTAC's arguments once, see Amanda Foods III, 35 CIT at ___, 774 F. Supp. 2d at 1290 n.9 & 1291 n.11, it remains unpersuaded by the reiteration of these same arguments.

     AHSTAC also argues that the withdrawal of six respondents from the litigation is evidence of dumping by the remaining cooperative, non-individually investigated respondents. AHSTAC's Reply Br. at 3. But AHSTAC presents no evidence to support such an inference. On the other hand, the rates assigned to the individually investigated respondents, after review, are potentially representative of the respondents as a whole. See Amanda Foods I, 33 CIT at ___, 647 F. Supp. 2d at 1381. It follows that, absent other evidence, the court will not require Commerce to draw an inference of dumping solely from the withdrawal of these six Plaintiffs.

     Nor will the court, in a case where all the remaining parties have cooperated, require Commerce to apply an adverse inference, as AHSTAC suggests it should do. See AHSTAC Reply Br. at 3 (citing 19 U.S.C. § 1677e(b)). All twenty-two of the cooperative, non-individually investigated respondents, who were initially Plaintiffs in this case, were fully cooperative in the third administrative review. The six Plaintiffs that withdrew

neither refused nor failed to submit requested information;
rather, they sought, and were granted, a voluntary dismissal by
stipulation pursuant to the court's rules.  <u>See</u> Stipulation of
Dismissal, ECF No. 80.  Nor has AHSTAC put forward any evidence
or argument that the sixteen remaining Plaintiffs have acted
uncooperatively, thereby justifying the application of an adverse
inference against them.  As the court discussed in <u>Amanda Foods
I</u>, where "Commerce has not stated that any of the Plaintiffs were
non-cooperative . . . 19 U.S.C. § 1677e does not provide a basis
for the Department's use of [adverse inferences] with respect to
the cooperating companies in the present case." <u>Amanda Foods I</u>,
33 CIT at __, 647 F. Supp. 2d at 1382.  The court abides by no
different standard in this regard.

<u>II.</u>  <u>The Domestic Processors</u>

        The Domestic Processors argue that the method Commerce
used to corroborate the *de minimis* all-others rate for
cooperative, non-selected respondents does not meet the
reasonableness threshold required by 19 U.S.C. § 1673d(c)(5)(B).
<u>See</u> Responsive Comments on Results of Redetermination Pursuant to
Court Remand on Behalf of the Domestic Processors at 1, ECF No.
90 ("Domestic Processors' Reply Br.").[9]

---

        [9] In particular, the Domestic Processors assert that (1) the
Q&V Questionnaire data is unreliable because it is inconsistent
with CBP entry data; (2) the count-size specific average unit
                                              (footnote continued)

The Domestic Processors' challenge fails because it conflates the two steps of the methodology Commerce used to determine the all-others rate in the <u>Remand Results</u>.  In step one of this methodology, Commerce determines the all-others rate using the statutorily recommended methodology of averaging the weighted-average dumping margins of the individually investigated respondents.  In step two, Commerce corroborates the accuracy of this methodology by comparing the Q&V Questionnaire data on a count-size specific basis with the count-size specific normal value of the individually investigated respondents.  Thus, when the Domestic Processors state that "these Q+V data do not appear to be reliable and sufficient to support a finding that there is no evidence of dumping by these respondents during the POR, and therefore assignment of *de minimis* margins *on the basis of this data* is unreasonable," Domestic Processors' Reply Br. at 1 (emphasis added), they are incorrectly identifying the function of the data and methodology upon which the all-others rate is based, as well as what makes such data and methodology

---

[9](footnote continued)
values may be distorted because Commerce did not specify how count-size was to be reported; and (3) the average unit values may be distorted because Commerce did not provide instructions for how values should be reported. Domestic Processors' Reply Br. at 1, 4-5, 6-7.

reasonable.[10]  That the Domestic Processors' statement is
incorrect follows from the reasoning behind the court's holding
in Amanda Foods III, i.e., that averaging the weighted-average
dumping margins of the individually investigated respondents is a
reasonable methodology for setting the all-others rate for
cooperative, non-individually investigated respondents.[11]

      Pursuant to 19 U.S.C. § 1673d(c)(5)(B) Commerce "may
use any reasonable method to establish the estimated all-others
rate for exporters and producers not individually investigated,
*including* averaging the estimated weighted average dumping
margins determined for the exporters and producers individually

_____

      [10] The same reasoning is reflected in the Domestic
Processors' two other challenges based on count-size and average
unit value. See Domestic Processor' Reply Br. at 6 ("Such matches
that have not been subject to basic comparability controls cannot
form a reasonable basis for the conclusion that there is no
evidence that separate rate respondents engaged in dumping during
the period of review. *Hence*, the assignment of *de minimis*
margins for separate rate respondents is not supported by
substantial evidence . . . ." (emphasis added)); id. at 8
("Commerce erred in not taking into account the differences
between the basis upon which values are reported for mandatory
respondents and the separate rate respondents, and therefore the
estimated margins arrived at in the Remand Results are not
accurate and cannot serve as a substantial basis for Commerce's
conclusions that there is no evidence of dumping such that the
assignment of the *de minimis* margins is reasonable.").

      [11] "[T]he statute explicitly contemplates averaging the zero
and *de minimis* rates received by individually investigated
respondents as a reasonable methodology for assigning an
estimated 'all others rate' in cases where all rates calculated
for individually investigated respondents are zero or *de
minimis*." Amanda Foods III, 35 CIT at __, 774 F. Supp. 2d at
1291.

investigated." (emphasis added).  In this statute, "including"

serves to "place, list, or rate as a part or component of a whole

or of a larger group, class, or aggregate." <u>Webster's Third New</u>

<u>International Dictionary</u> 1143 (2002); <u>see also</u> <u>Black's Law</u>

<u>Dictionary</u> 831 (9th ed. 2009) ("The participle *including*

typically indicates a partial list . . . .").  Thus, the statute,

while permitting any reasonable methodology, expressly places the

methodology of averaging zero and *de minimis* rates among the

larger group of reasonable methodologies.  According to the

statute, this methodology is presumptively reasonable.

This reasoning is bolstered by the Statement of

Administrative Action for the Uruguay Round Agreements Act,[12]

which notes that averaging the *de minimis* rates is the expected

methodology when all individually investigated respondents

receive a zero or *de minimis* rate:

> The expected method in such cases will be to weight-
> average the zero and *de minimis* margins and margins
> determined pursuant to the facts available, provided
> that volume data is available.  However, if this method
> is not feasible, or if it results in an average that
> would not be reasonably reflective of potential dumping
> margins for non-investigated exporters or producers,
> Commerce may use other reasonable methods.

---

[12] Pursuant to 19 U.S.C. § 3512, "The statement of
administrative action . . . shall be regarded as an authoritative
expression by the United States concerning the interpretation and
application of the Uruguay Round Agreements and this Act in any
judicial proceeding in which a question arises concerning such
interpretation or application."

Uruguay Round Agreements Act, Statement of Administrative Action,
H.R. Doc. No. 103-316, vol. 1, at 873 (1994), *reprinted in* 1994
U.S.C.C.A.N. 4040, 4201 ("SAA"); see also Amanda Foods II, 34 CIT
at __, 714 F. Supp. 2d at 1291-92.

        In addition, a presumption of reasonableness is
sensible in light of the overall statutory scheme.  When Commerce
chooses to limit the number of individually investigated
respondents pursuant to 19 U.S.C. § 1677f-1(c)(2), it is choosing
to review the individually investigated respondents as
potentially representative of all respondents in the review.
When calculating the all-others rate pursuant to the general
rule, the all-others rate "shall be an amount equal to the
weighted average of the estimated weighted average dumping
margins established for exporters and producers individually
investigated . . . ." 19 U.S.C. § 1673d(c)(5)(A).  Thus, in
general, the all-others rate is based on the rates of the
individually investigated respondents.  While zero and *de minimis*
rates are excluded from this calculation, see 19 U.S.C.
§ 1673d(c)(5)(A), when all individually investigated respondents
receive zero or *de minimis* rates — i.e., pursuant to the
exception at § 1673d(c)(5)(B) — there is no *a priori*
justification for considering the individually investigated
respondents unrepresentative of all respondents.  Rather, as the
court noted in Amanda Foods I:

> All parties agree that the mandatory respondents are
> presumed to be representative of the respondents as a
> whole; consequently, the average of the mandatory
> respondents' rates may be relevant to the determination
> of a reasonable rate for the separate rate respondents.
> More particularly, that the mandatory respondents in
> the current review were found not to be engaged in
> dumping was evidence indicating that the responding
> separate rate Plaintiffs may also no longer be engaged
> in dumping.

Amanda Foods I, 33 CIT at ___, 647 F. Supp. 2d at 1380.  In other

words, when setting an all-others rate pursuant to 19 U.S.C.

§ 1673d(c)(5)(A), the rates of the individually investigated

respondents are presumed to be substantial evidence of the rate

for all other respondents, and such presumption is equally

applicable when determining the all-others rate pursuant to

§ 1673d(c)(5)(B).

Averaging the zero and de minimis rates of the

individually investigated respondents is a reasonable methodology

for calculating the all-others rate because it relies upon the

margins of the individually investigated respondents.  Thus, the

all-others rate is neither set nor justified by comparison of the

Q&V Questionnaire data to the normal value of the individually

investigated respondents.  Rather, the truncated dumping analysis

Commerce conducted using the Q&V Questionnaire data only serves

to confirm the results of an otherwise reasonable methodology.

Unless some evidence indicates otherwise, the average of the

weighted-average dumping margins for the individually

investigated respondents is a reasonable all-others rate because it is based on substantial evidence in the form of the rates of the individually investigated respondents.

The Domestic Processors do not challenge the methodology for arriving at the all-others rate, they challenge the methodology by which Commerce *confirmed* the appropriateness of that rate. See Amanda Foods III, 35 CIT at __, 774 F. Supp. 2d at 1291 ("Commerce confirmed the reasonableness of using this approach with supplementary evidence."). By reopening the record and collecting Q&V Questionnaire data, Commerce sought to ensure that the average of *de minimis* rates would be "reasonably reflective of potential dumping margins for non-investigated exporters or producers . . . ." SAA, H.R. Doc. No. 103-316 at 873, 1994 U.S.C.A.N.N at 4201. What data Commerce collected confirmed the appropriateness of the statutorily permitted methodology.

The Domestic Processors, in contrast, have not presented evidence to undermine that finding. The evidence they have presented does not indicate that the dumping margin assigned was inaccurate, it only suggests that a more thorough process of confirmation was possible. Without presenting evidence that undermines the reasonableness of the all-others rate assigned, the Domestic Processors' arguments are insufficient to call into question the reasonableness of a methodology explicitly presumed

reasonable under the statute.

Thus, the court reiterates its finding in <u>Amanda III</u>
that

> [Commerce] has applied a methodology specifically
> contemplated in the AD statute as a reasonable approach
> under similar circumstances and has reasonably
> corroborated the resulting rates with supplemental
> record evidence that a reasonable mind could accept as
> sufficient to support its conclusion — that the average
> of the mandatory respondents' zero and *de minimis* rates
> yields rates that are not unreasonably reflective of
> Plaintiffs' actual pricing behavior.

<u>Amanda Foods III</u>, 35 CIT at __, 774 F. Supp. 2d at 1292 (citation
omitted).


## CONCLUSION

For the foregoing reasons, and consistent with the
court's opinion in <u>Amanda Foods III</u>, 35 CIT at __, 774 F. Supp.
2d at 1292, the Department's determinations in the <u>AR3 Final
Results</u>, 74 Fed. Reg. at 47,191, as amended by the <u>Remand
Results</u>, are AFFIRMED.

Judgment will be entered accordingly.


                                    ___/s/ Donald C. Pogue___
                                    Donald C. Pogue, Chief Judge


Dated: May 30, 2012
       New York, New York

Slip Op. 12 -68

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMANDA FOODS (VIETNAM) LIMITED, *et al.*, | |
| Plaintiffs, | |
| v. | Before: Donald C. Pogue, Chief Judge |
| UNITED STATES, | |
| Defendant, | Consol. Court No. 09-00431[1] |
| and | |
| AD HOC SHRIMP TRADE ACTION COMMITTEE and THE DOMESTIC PROCESSORS, | |
| Defendant-Intervenors. | |

<u>JUDGMENT</u>

The court having heard and decided this matter, now in accordance with that opinion, the Department of Commerce's determinations in <u>Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam</u>, 74 Fed. Reg. 47,191 (Dep't Commerce Sept. 15, 2009) (final results and final partial rescission of antidumping duty administrative review), as further explained by the <u>Final Results of Redetermination Pursuant to Court Remand</u>, A-552-802, ARP 07-08 (Mar. 29, 2012), Remand R. Pub. Doc. 18, <u>available at</u> http://ia.ita.doc.gov/remands/11-

---

[1] This action was consolidated with Court Nos. 09-00434, 09-00435, 09-00438, and 09-00446. Order at 2, Feb. 9, 2010, ECF No. 36.

Court No. 09-00431                                           Page 2

155.pdf, are AFFIRMED.


                                          ____/s/ Donald C. Pogue____
                                          Donald C. Pogue, Chief Judge


Dated: May 30, 2012
       New York, New York